IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HOME MERIDIAN INTERNATIONAL, )
INC., )
 )
 Plaintiff, )
 ) 1:12CV1093
 v. )
 )
CABOT LONGNECKER, )
 )
 Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Cabot Longnecker's motion for summary judgment and partial summary judgment. (Docket Entry 65.) Plaintiff Home Meridian International, Inc. (hereinafter "Plaintiff" or "HMI") opposes the motion. Also before the Court is Plaintiff's motion for summary judgment. (Docket Entry 68.) All matters are ripe for disposition. For the reasons stated herein, the Court recommends that Defendant's motion for summary judgment and partial summary judgment be granted in part and denied in part, and Plaintiff's motion for partial summary judgment be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this action against Defendant on August 17, 2012 in the General Court of Justice, Superior Court Division, Guilford, North Carolina asserting claims for breach of contract and violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"). (Docket Entry 2.) Thereafter, the case was removed to this Court on October 9, 2012. (Docket Entry 1.) Plaintiff filed an Amended Complaint on

November 8, 2012 (Docket Entry 8), and Defendant answered with counterclaims on December 3, 2012. (Docket Entry 11.) On May 6, 2013, Plaintiff filed a motion for preliminary injunction (Docket Entry 23) which the undersigned recommended be denied. (Docket Entry 56.)[1] Defendant filed his motion for summary judgment as to Plaintiff's claims and partial summary judgment as to his counterclaims on October 30, 2013. (Docket Entry 65.) Plaintiff filed its motion for partial summary judgment as to Counts I, III and IV of Defendant's counterclaims on October 30, 2013.

## II. FACTUAL BACKGROUND

HMI is a company that designs and markets case goods and upholstered furniture, primarily selling its wares to furniture retailers and club stores. (Am. Compl. ¶ 2, Docket Entry 8.) In its Amended Complaint, Plaintiff alleges that on April 5, 2011, the parties entered into a Sales Representation Agreement ("SRA") in which HMI engaged Defendant as an independent contractor "to promote and solicit orders . . . for [HMI's] products from the customers and potential customers" for a period of time from April 1, 2011 through March 31, 2013. (*See* SRA ¶ 1, Ex. 1, Docket Entry 8-1.) Defendant also agreed to "vigorously promote the sale of [HMI's] products to the Customers and use [his] best efforts in connection therewith." (*Id.* ¶ 5.) The SRA also contained a restrictive covenant in which Defendant was prohibited from engaging in any activity during the term that was "competitive with or harmful to [HMI]." (*Id.* ¶ 6.) After the term ended, for a period of twelve months Defendant agreed that he would not "solicit, encourage, cause or attempt to

---

[1] The motion is now pending before the district court judge for a final order.

cause any Restricted Customer (as defined in [paragraph 13(e)]) to reduce any part of its business with [HMI]." (*Id.* ¶ 13(b)).

Plaintiff alleges that Defendant breached sections 5 and 6 of the SRA by "selling . . . case goods and/or upholstered furniture for the residential and hospitality markets directly to HMI's customer and/or potential customers in a manner that is competitive with or harmful to HMI." (Am. Compl. ¶ 14.) The Complaint further alleges that Defendant attempted to establish a direct relationship with HMI's furniture manufacturer to facilitate direct sales to HMI's customers. (*Id.* ¶ 15.) Defendant also breached the SRA by indicating in an October 9, 2012 letter his intent to "fully and fairly compete with [HMI] in the marketplace," less than one month after receiving his termination letter. (*See* Ex. 3 at 3, Docket Entry 8-3.) Plaintiff also asserts that Defendant is in violation of the UDTPA. (Am. Compl. ¶¶ 36-40.)

Defendant counterclaimed seeking a declaratory judgment and asserting that Plaintiff breached the SRA and breached the implied covenant of good faith and fair dealing. (*See generally* Def.'s Countercl., Docket Entry 11.) He also asserted a claim under the UDTPA. (*Id.* ¶¶ 44-47.) On behalf of HMI, Defendant was to promote and solicit orders from certain customers and potential customers, including Sam's Club, Wal-Mart, Macy's and J.C. Penney. (*Id.* ¶ 10; SRA Ex. A, Docket Entry 8-1.) Defendant's primary account was Sam's Club, which represented the majority of his past commissions and future expected commissions. (Def.'s Countercl. ¶ 20.) As alleged by Defendant, Plaintiff removed the Sam's Club account "for no reason other than to benefit [HMI] at the expense and to the detriment of [Defendant]." (*Id.* ¶¶ 18, 19.) Defendant asserts that he complied with his

3

obligations and that it was Plaintiff that materially breached the SRA by "unilaterally removing Sam's Club as a customer, refusing to pay [Defendant] his earned commissions, modifying the terms and conditions for calculating his commissions, and wrongfully terminating the [SRA]." (*Id.* ¶ 33.) Defendant further asserts that HMI's conduct has caused injury to Defendant and his business. (*Id.* ¶ 47.)

## III. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the

non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). "Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958). Moreover, the non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993), *modified on other grounds*, *Stokes v. Westinghouse Savannah River Co.*, 420, 429-30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989).

I. <u>Defendant's Motion for Summary Judgment and Partial Summary Judgment</u>

Defendant moves for summary judgment as to Plaintiff's claim for breach of contract and also moves for a finding that Plaintiff is liable for monetary damages to Defendant because the restrictive covenants in the SRA are a restraint on trade. Defendant argues that summary judgment should be granted in his favor because: (1) the SRA is void and unenforceable for lack of consideration and because Defendant is an independent contractor; (2) the SRA is void and unenforceable because there was no "meeting of the minds" as to the essential terms of computing Defendant's compensation; and (3) Plaintiff has not presented sufficient evidence to support its UDTPA claim.

A. Enforceability of SRA for Lack of Consideration & Defendant's Independent Contractor Status

Defendant first argues that the SRA is void and unenforceable for lack of consideration as to the restrictive covenant. Defendant bases this contention on the fact that he had already began working for Plaintiff prior to the signing of the SRA which included the restrictive covenant. Plaintiff argues that new or additional consideration in the form of commission advances, a two-year contractual term, and an exclusivity provision was in fact given to validify the restrictive covenants. Defendant alleges that such consideration was illusory, making the contract void and unenforceable.[2]

North Carolina courts have held that a covenant not to compete is only valid if it is: "'(1) in writing, (2) entered into at the time and as a part of the contract of employment, (3) based on valuable considerations, (4) reasonable both as to time and territory embraced in the restrictions, (5) fair to the parties, and (6) not against public policy.'" *Hejl v. Hood, Hargett & Assoc., Inc.*, 196 N.C. App. 299, 304, 674 S.E.2d 425, 428 (2009) (quoting *Exterminating Co. v. Griffin and Exterminating Co. v. Jones*, 258 N.C. 179, 181, 128 S.E.2d 139, 140–41 (1962)). When restrictive covenants are entered into during the initial hiring of an employee, "mutual promises of employer and employee furnish valuable considerations each to the other for the contract." *Id.* (quoting *Reynolds & Reynolds Co. v. Tart*, 955 F. Supp. 547, 553 (W.D.N.C.

---

[2] In his brief in support of his motion for summary judgment and partial summary judgment, Defendant limits his arguments as to summary judgment on Plaintiff's claims to (1) the unenforceability of the SRA for lack of consideration for the restrictive covenants; (2) the unenforceability of the SRA as a result of Defendant's status as an independent contractor; (3) lack of meeting of the minds as to compensation; and (4) insufficient evidence for Plaintiff's UDTPA claim. In opposition to Defendant's motion, Plaintiff discusses other provisions of the SRA that Defendant allegedly breached, which were not included in Defendant's memorandum in support of granting summary judgment in his favor. Because the Court recommends denying in part Defendant's summary judgment motion, the Court will not address additional provisions in the contract that Defendant did not originally raise in his argument.

1997)) (internal quotation marks omitted). In circumstances where a restrictive covenant agreement is entered into after parties have formed an employment relationship, there must be new or additional consideration for the covenant. *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 637, 568 S.E.2d 267, 272 (2002) (citing *Greene Co. v. Kelley*, 261 N.C. 166, 168, 134 S.E.2d 166, 167 (1964)). To uphold a restrictive covenant, North Carolina courts have held the following new or additional consideration to be sufficient: "continued employment for a stipulated amount of time; a raise, bonus, or other change in compensation; a promotion; additional training; uncertificated shares; or some other increase in responsibility or number of hours worked." *Hejl*, 196 N.C. App. at 304, 674 S.E.2d at 428-29 (citing several North Carolina cases upholding such new or consideration as sufficient).

In this present case, evidence suggests that an employment relationship existed prior to April 4, 2011 when the parties signed the SRA. Business cards were issued to Defendant with an email address under Plaintiff's company name. (Ex. 11, Docket Entry 67-1.) Plaintiff's Sam's Club account was assigned to Defendant in August 2010 and he attended a trip on behalf of Plaintiff in September 2010. (Ex. 12, Docket Entry 67-2; Ex. 13, Docket Entry 67-3.) In a deposition, George Revington, Plaintiff's president and CEO, admitted that Defendant had sold products on behalf of Plaintiff prior to April 2011. (Revington Dep. at 19-20, Docket Entry 67-6.) Based upon this preexisting relationship, the Court will therefore consider whether the restrictive covenants in the SRA are supported by new or additional consideration.

Plaintiff argues that new consideration was present in the SRA, specifically Defendant's right to commission advances, his two-year term which was terminable only for

cause, and the exclusivity provision granting Defendant exclusive control over customers assigned to him. Defendant received three monthly advances of $30,000, for a total of $90,000. (SRA ¶ 4, Ex. 1, Ex. B ¶ 1.) Defendant argues that the payments were not in fact "advances," but rather payments for commissions withheld. The Court finds Defendant's argument without merit because the language of the contract addresses commission advances "during the first three months of the Term," which began April 1, 2011. (*Id.*; SRA ¶ 3.) Even if the Court were to consider commissions earned prior to April 1st, Defendant's commission total of approximately forty-three thousand dollars earned during that time was less than half of the total advance commissions. (*See* Ex. 14, Docket Entry 67-4). Thus, the Court concludes that Plaintiff, to its detriment, still obligated itself to commission advances based upon the SRA signed by the parties in April 2011.

Defendant's arguments concerning the two-year term and exclusivity provision are also without merit. The SRA obligated Plaintiff to a two-year agreement with Defendant, only terminable by natural expiration or with "Cause." (SRA ¶ 12.) The SRA defines the term "Cause" to include five different circumstances in which the agreement could be terminated before its natural expiration. (*Id.*) Thus, Plaintiff could not at its own discretion and without cause terminate the SRA with Defendant. The exclusivity provision also bound Plaintiff to obtain consent of Defendant before selling products to any of its customers assigned to Defendant. (*Id.* ¶ 2.) Defendant argues that the exclusivity provision is illusory because Plaintiff had sole discretion to remove customers from Defendant's account, but such discretion does not consider Plaintiff's detriment while customers remained with Defendant.

Defendant relies on three cases, all distinguishable from the present case. In *Milner Airco, Inc. of Charlotte, NC v. Morris*, the North Carolina Court of Appeals reversed the decision of the trial court granting a preliminary injunction and held that the consideration for the restrictive covenant was "illusory at best" because the plaintiff could only become an account manager "when the economy improved." 111 N.C. App. 866, 869-70, 433 S.E.2d 811, 813-14 (1993). In the other two cases cited by Defendant, the court held that plaintiffs made no new promises to validate the restrictive covenants because the purported consideration was purely discretionary acts in which no obligation was imposed. *See Mastrom, Inc. v. Warren*, 18 N.C. App. 199, 202, 196 S.E.2d 528, 530 (1973); *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 78, 185 S.E.2d 278, 283 (1971). Here, the Court finds that the consideration given is not illusory, but rather sufficient to make the restrictive covenant enforceable.[3] Therefore, Defendant's motion for summary judgment as to the issue of consideration should be denied.

Defendant also asserts that the restrictive covenants are void and unenforceable because he was simply an independent contractor and not an employee of Plaintiff. It is not disputed that Defendant was in fact an independent contractor for Plaintiff as the language of the SRA states. (SRA ¶¶ 8, 10.) Defendant argues that "in the absence of any sale of products for [Plaintiff], [Defendant] was entitled to nothing, no matter the expenses incurred

---

[3] To the extent Defendant's argument challenges the adequacy of consideration given, the Court will not evaluate such consideration. *Hejl*, 196 N.C. App. at 305, 674 S.E.2d at 429. "The slightest consideration is sufficient to support the most onerous obligation, the inadequacy, . . . is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced." *Id.* (quoting *Machinery Co. v. Ins. Co.*, 13 N.C. App. 85, 90–91, 185 S.E.2d 308, 311–12 (1971) (internal quotation marks omitted).

presenting product to companies on [Plaintiff's] behalf." (Def.'s Resp. Br. at 6, Docket Entry 66.) Acting substantially similar to corporations, Defendant argues that "[t]here is no legitimate business interest in allowing two independent entities to restrict competition among themselves." (Def.'s Reply Br. at 3, Docket Entry 79.) Defendant cites *Starkings Court Reporting Serv., Inc. v. Collins*, in which the North Carolina Court of Appeals found the plaintiff to be an "independent contractor" and that the restrictive covenant was "designed for one purpose: to restrain and inhibit normal competition." 67 N.C. App. 540, 542, 313 S.E.2d 614, 615-16 (1984). The North Carolina Court of Appeals, citing *Starkings*, again addressed the applicability of non-compete covenants in the context of independent contractors in *Mkt. Am., Inc. v. Christman-Orth*, 135 N.C. App. 143, 154, 520 S.E.2d 570, 578 (1999). The defendant in that case argued that the covenant should have been void because of her relationship with her employer as an "independent distributor." *Id.* The court rejected the defendant's argument stating that it "has held that non-competition clauses are applicable to independent contractor relationships." *Id.* (citing *Starkings*, 67 N.C. App. 540, 313 S.E.2d 614). Likewise, this Court finds Defendant's argument that the contract is unenforceable simply because of his independent contractor status is without merit.[4] Summary judgment should be denied as to this argument.

---

[4] Furthermore, Defendant's argument that the contract is unenforceable as against public policy is disputed by Plaintiff. Defendant argues that Plaintiff gave up nothing and that he paid all of his expenses, used his own equipment, and that he was responsible for product development. (Def.'s Br. at 16.) In response, Plaintiff asserts that it created an entire infrastructure to assist Defendant (Hope Decl. ¶ 8), it paid some expenses for Defendant (Ex. 24, Docket Entry 75-24), and asserts that product development was not the one-man shown described by Defendant. (Cantrell Dep. at 21-22, Docket Entry 75-3.) At minimum, a genuine issue is present precluding summary judgment in favor of Defendant on this issue.

B.  Meeting of the Minds

Defendant also argues that the contract is unenforceable because there was no meeting of the minds as to the essential terms of Defendant's compensation. (Def.'s Br. at 16.) Defendant argues that he sent Revington a sample spreadsheet for calculating commissions, and it was clear to him that he would be paid according to the spreadsheet. (*Id.* at 17.) Plaintiff argues that Defendant was paid according to the unambiguous terms of the contract representing the parties' mutual assent. (Pl.'s Resp. at 15, Docket Entry 74.)

"It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995) (citing *O'Grady v. First Union Nat. Bank*, 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978)). "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Nationwide Mut. Fire Ins. Co. v. Mnatsakanov*, 191 N.C. App. 802, 805, 664 S.E.2d 13, 15 (2008) (internal quotation omitted). Absent a meeting of the minds on all essential terms, no contract exists. *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 912 (1998) (citation omitted). Compensation is generally an essential term, therefore it "must be definite and certain or capable of being ascertained from the contract itself." *Howell v. C.M. Allen & Co.*, 8 N.C. App. 287, 289, 174 S.E.2d 55, 56 (1970). "When the contract language is unambiguous, our courts have a duty to construe and enforce the contract as written, without disregarding the express language used." *Mayo v. N.C. State Univ.*, 168 N.C. App.

11

503, 508, 608 S.E.2d 116, 120 *aff'd*, 360 N.C. 52, 619 S.E.2d 502 (2005) (citing *Southpark Mall Ltd. P'ship. v. CLT Food Mgmt., Inc.*, 142 N.C. App. 675, 679, 544 S.E.2d 14, 17 (2001)).

Here, the only written agreement between the parties, the SRA, is clear and unambiguous as to Defendant's compensation. Exhibit B of the SRA regarding compensation of commissions and advances reads in part:

> For each Approved Order . . . The commission . . . will be calculated as a percentage of the Net Gross Profit (as defined below) for the Approved Order pursuant to the following chart, less: (i) any outstanding advances under Section 1 of this Exhibit, and (ii) the advance for that Approved Order under Section 2 of this Exhibit.

Ex. B, ¶ 3(a).

The Exhibit defines the "Net Gross Profit":

> The Net Gross Profit for an Approved Order means the gross sales price actually paid by the customer for the Approved Order less: (i) the actual cost of goods and freight, (ii) all product development costs related to that customer (samples, sample freight, sample shows, sample testing, factory audits, etc.), (iii) all returns, discounts, allowances and deductions taken by the customer or that the Company expects the customer to take, (iv) all related design and sales commissions, and (v) for orders that require inventory or warehousing, a percentage deduction based on the Company's current cost basis for warehouse costs, inventory carrying costs, and projected obsolescence losses.

*Id.* ¶ 3(b).

Defendant's argument ignores the unambiguous compensation language in the SRA. It clearly defines how commission and advances are to be paid. This agreement, which represents the intent of the parties, strongly indicates mutual assent. Because the agreement is unambiguous, we need not look beyond it to determine the intent of the parties. *Nash v.*

*Yount*, 35 N.C. App. 661, 663, 242 S.E.2d 398, 399 (1978) (citation omitted) (terms of contract unambiguous, thus "the express language of the contract controls and not what either party thought the agreement to be."). Defendant signed the agreement, and admits that he was paid according to the agreement. (Longnecker & Associates Dep. at 64, Ex. 13, Docket Entry 70-13; Saltzman Dep. at 179, Ex. 10, Docket Entry 70-10; *see also* Commission Reports, Ex. 11, Docket Entry 70-11.) Defendant's subsequent complaints about compensation (Ex. 22, Docket Entry 67-12) do not present a genuine issue of material fact as to whether there was a meeting of the minds between the parties. Thus, Defendant's motion for summary judgment as to this issue should be denied.

C. Plaintiff's UDTPA claim

Defendant also asserts that Plaintiff has not presented sufficient evidence to support its UDTPA claim. More specifically, Defendant argues that his conduct, viewed in the light most favorable to Plaintiff, amounts only to a breach of contract and nothing more. (Def.'s Br. at 19.) Plaintiff opposes, asserting that Defendant's acts constitute egregious and aggravating circumstances warranting a UDTPA claim. (Pl.'s Resp. at 17.) Viewed in the light most favorable to Plaintiff, Defendant's motion for summary judgment as to Plaintiff's UDTPA claim should be granted.

N.C. Gen. Stat. § 75-1.1(a) states in part: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty." *Bernard v. Cent. Carolina Truck Sales*, 68 N.C. App. 228, 232, 314 S.E.2d 582, 585, *rev. denied*,

13

311 N.C. 751, 321 S.E.2d 126 (1984). To state a UDTPA claim in North Carolina, Plaintiff must allege that "1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Whether an act is deemed unfair or deceptive is "a question of law for the court." *Id.* (citation omitted). "Conduct is unfair or deceptive if it has the capacity or tendency to deceive." *Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992). A party must allege egregious or aggravating circumstances to fall within N.C. Gen. Stat. § 75-1.1(a). *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 740 S.E.2d 923, 928 (N.C. Ct. App. 2013); *Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993). Without more, a mere intentional breach of contract is not sufficient to state a claim under N.C. Gen. Stat. § 75-1.1. *Pappas v. NCNB Nat. Bank of N.C.*, 653 F. Supp. 699, 707 (M.D.N.C. 1987).

Here, the Court finds that Plaintiff's claim does not assert egregious or aggravating factors in the form of intentional misrepresentation on behalf of Defendant. Plaintiff presents evidence about an email entitled "Rumors," in which Defendant purports to tell Plaintiff about "rumors" circulating about Defendant's alleged activities in contravention of the SRA. (E-mail, Ex. 27, Docket Entry 75-27.) Plaintiff also asserts that Defendant attempted to conceal his communications with Plaintiff's competitor by using an alternate email. (Hester Decl. ¶ 24, Docket Entry 75-5.) Based upon the evidence presented in the light most favorable to Plaintiff, the Court finds that Defendant's conduct, at most, constitutes nothing more than an intentional breach of contract claim and lacks egregious or

aggravating factors. Therefore, Defendant's motion for summary judgment as to Plaintiff's UDTPA claim should be granted.

D. Defendant's Motion for Partial Summary Judgment on Liability

Without further explanation in his supporting memorandum brief, Defendant seeks a "finding that [Plaintiff] is liable in monetary damages to [Defendant] as a matter of law because the restrictive covenants are a restraint of trade." (Def.'s Br. at 2.) Defendant's sole argument in his reply brief is that the restrictive covenants are void and illegal restraints of trade in violation of Section 75-1. In opposition to Defendant's motion, Plaintiff relies on the Court's discussion in *Cole v. Champion Enterprises, Inc.*, analyzing violations of North Carolina's Chapter 75 under antitrust law and holding that "adverse impact and 'antitrust injury'" must be present to recover damages. 496 F. Supp. 2d 613, 634-35 (M.D.N.C. 2007) *aff'd*, 305 F. App'x 122 (4th Cir. 2008). Defendant argues that Plaintiff's reliance on *Cole* is misplaced, and that an antitrust analysis is not necessary under N.C. Gen. Stat. §§ 75-1 and 75-16. (Def.'s Reply at 10.) Without fully discussing the implications of *Cole*, Defendant's limited argument on this issue would have the Court find as a matter of law that the restrictive covenants are in fact a restraint on trade. The Court has not made such finding, thus Defendant's motion for partial summary judgment as to his counterclaim should be denied.[5]

---

[5] In any event, the Court notes that Defendant has not argued, nor does evidence illustrate "antitrust injury" or "adverse impact" as set out in *Cole*. *See Cole*, 496 F. Supp. 2d at 635 ("[Plaintiff] cannot show an adverse effect on competition by merely showing that he was unreasonably restrained from competing with [Defendant].")

15

## II. Plaintiff's Motion for Summary Judgment

### A. Count I – Breach of Contract

Plaintiff also moves for partial summary judgment as to Counts I, III and IV of Defendant's counterclaims. (Docket Entry 68.) Plaintiff argues that Defendant's breach of contract claim (Count I) fails as a matter of law because: (1) Plaintiff had a right to remove Sam's Club from Defendant's account, (2) Plaintiff properly calculated and paid Defendant's commissions and (3) Plaintiff properly terminated the SRA. Under North Carolina law, "[t[he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Count I of Defendant's counterclaim is based solely on the SRA; thus, there is no issue as to the validity of the contract here.

As to Defendant's method of compensation, there is no dispute as to whether Defendant's commission was calculated in accordance with the terms of the SRA. The unambiguous terms of the agreement outlined computations for payment, and Defendant and his accountant even agreed that payment calculations were made according to the terms of the SRA. (Saltzman Dep. at 179; Longnecker & Assoc. Dep. at 64, Docket Entry 70-13.) Thus, any argument as to calculation of payment is without merit. However, as explained below, there is a dispute as to whether Defendant materially breached the SRA, thereby precluding summary judgment on the issue of whether Defendant was paid all commissions.

Plaintiff argues that it properly terminated the SRA for cause, making Defendant ineligible to receive sales commissions after the termination of the agreement. As previously stated, Section 12 outlines five examples for terminating for "cause," one of which is if

16

Defendant "breaches the [SRA]." (SRA ¶ 12.) Upon material breach committed by Defendant, he is no longer eligible to receive commissions. (*Id.* Ex. B ¶ 3(c)). Plaintiff terminated the SRA for Defendant's violation of sections 5 and 6 of the SRA, in particular, Defendant's failure to use best efforts to promote Plaintiff's products, and engaging in activity that is harmful or competitive to Plaintiff. Plaintiff asserts that Defendant competed with Plaintiff by working with its competitor, Marks & Cohen, during the term of the SRA to sell furniture to many of Plaintiff's customers such as Sam's Club and Costco. This argument is based primarily on the testimony of Marks & Cohen's president Ty Hester. (Hester Decl. ¶¶ 5-11; Hester Dep. at 251, 302, Docket Entry 70-20.) Plaintiff also presented evidence of Defendant's dealing with Lowe's during the term of the SRA. (Eller Email, Ex. 31, Docket Entry 70-31; Bacon Dep. at 117-118, Docket Entry 70-16.) Defendant asserts that his relationship with Marks & Cohen was not in violation of the SRA because it was work not limited by the SRA. Furthermore, Defendant asserts that any advice given to Hester with regards to Sam's Club was "inconsequential administrative assistance," thus his conduct was not a material breach of the SRA. (Def.'s Resp. Br. at 12, Docket Entry 73; *see also* Hester Dep. at 334-35, 337-38. Docket Entry 73-19.) Defendant also argues that sales to Lowe's were allowed because Plaintiff never made sales or presentations to Lowe's in 2012. (Cantrell Dep. at 35, Docket Entry 73-6.) Further, Defendant argues that he made attempts to sell to Wal-Mart on Plaintiff's behalf, but profit margins required for sales prevented him from doing so. (Def. Aff. ¶ 27, Docket Entry 73-2.)

Viewing the evidence in the light most favorable to Defendant, there is a genuine issue of material fact as to whether Defendant was in violation of the SRA. The parties

17

dispute many aspects of the alleged violations, including the type of furniture Defendant engaged in selling, the scope of services Defendant provided to customers, Defendant's efforts to sell to Wal-Mart and Defendant's relationship with Lowe's. The terms of the SRA do in fact prohibit Defendant from engaging in certain activity detrimental to Plaintiff and also require Defendant to assert best efforts while conducting business on behalf of Plaintiff. Whether the type of conduct Defendant engaged in constitutes a material breach of the SRA is a question for the jury. Moreover, Plaintiff's removal of the Sam's Club account from Defendant's list of customers "as it deems appropriate and reasonable under the circumstances," (SRA ¶ 1) relates directly to Defendant's conduct. Therefore, Plaintiff's motion for partial summary judgment as to Count I of Defendant's counterclaim for breach of contract should be denied.

B. Count III – Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff also seeks summary judgment as to Count III of Defendant's counterclaim for breach of the implied covenant of good faith and fair dealing. Defendant alleges that Plaintiff breached the implied covenant because it "performed in bad faith and with the wrongful intent to deprive [Defendant] of his rights and benefits under the [SRA]." (Def.'s Countercl. ¶ 42.) "'In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted); *see also Williams v. Craft Dev., LLC*, 199 N.C. App. 500, 506, 682 S.E.2d 719, 723 (2009) *writ denied, review denied*, 363 N.C. 859, 695 S.E.2d 452 (2010); *Governor's Club, Inc. v. Governor's Club Ltd. P'ship*, 152 N.C. App. 240, 251–52, 567 S.E.2d 781,

789 (2002). This court has previously held that a separate cause of action for breach of the implied covenant of good faith and fair dealing is "simply another way of stating a claim for breach of contract." *Ada Liss Grp. v. Sara Lee Corp.*, Case No. 06CV610, 2010 WL 3910433, at *14 (M.D.N.C. Apr. 27, 2010). Such claims are often considered separately in limited circumstances where a special relationship between the parties exists. *Meineke Car Care Centers, Inc. v. RLB Holdings, LLC*, 3:08VC240-RJC, 2009 WL 2461953, at *11 (W.D.N.C. Aug. 10, 2009) *rev'd and remanded on other grounds*, 423 F. App'x 274 (4th Cir. 2011) (unpublished) ("North Carolina courts . . . do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties."). Here, a special relationship does not exist between the parties. Moreover, Defendant's implied covenant claim is coextensive with his breach of contract claim and should not be treated separately. *Ada Liss Grp.*, 2010 WL 3910433, at *15. Therefore, Plaintiff's motion for summary judgment as to Defendant's independent claim for breach of the implied covenant of good faith and fair dealing should be granted.

Count IV – Unfair Deceptive Trade Practice Claim

Lastly, Plaintiff seeks summary judgment as to Count IV of Defendant's counterclaim for unfair and deceptive trade practices. The UDTPA claim is based primarily on the enforceability of the restrictive covenants previously discussed in Defendant's motion for summary judgment. As to the letters sent to business associates, Plaintiff sent the letters to preserve documentation in light of potential litigation. (Hope Decl. ¶ 7, Docket Entry 70-7; Hope Dep. at 176, Docket Entry 70-42.) Any unreasonable and unnecessary removal of the Sam's Club account from Defendant would constitute nothing more than a breach of

contract. Viewed in a light most favorable to Defendant, the evidence presented does not present egregious or aggravating circumstances and is insufficient to support an independent UDTPA claim. *Phelps Staffing*, 740 S.E.2d at 928. No genuine issue of material facts exists as to Defendant's UDTPA claim;[6] thus, Plaintiff's motion for summary judgment should be granted as to Count IV of Defendant's counterclaim.

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant and Plaintiff's motions for summary judgment (Docket Entries 65, 68) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's motion for summary judgment and partial summary judgment (Docket Entry 65) be **GRANTED** as to Plaintiff's unfair and deceptive trade practice claim; as to all other claims, Defendant's motion be **DENIED**.

2. Plaintiff's motion for partial summary judgment (Docket Entry 68) be **GRANTED** as to Counts III and IV of Defendant's counterclaim; as to Count I of Defendant's counterclaim, Plaintiff's motion be **DENIED**.

Joe L. Webster
United States Magistrate Judge

May 29, 2014
Durham, North Carolina

---

[6] To the extent Defendant argues "restraint of trade," the Court notes Defendant's failure to prove antitrust injury or adverse impact set out in *Cole*. *See Cole*, 496 F. Supp. 2d at 634-36.